IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SADDAM ABDULLAH, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 19-CV-5988 |
| | : | |
| BLANCHE CARNEY, *et al.*, | : | |
|     Defendants. | : | |

**MEMORANDUM**

**BAYLSON, J.**                                                                                                          **JUNE 17, 2020**

      Plaintiff Saddam Abdullah, a pretrial detainee incarcerated at the Curran-Fromhold Correctional Facility ("CFCF") in Philadelphia, brings this *pro se* civil action pursuant to 42 U.S.C. § 1983, based on the conditions of his confinement. For the following reasons, the Court will dismiss certain of Abdullah's claims for failure to state a claim and permit him to proceed on claims challenging his placement in administrative segregation. Abdullah will also be given an opportunity to file an amended complaint as to the dismissed claims.

**I.      FACTUAL ALLEGATIONS[1]**

      Abdullah's Complaint names five Defendants: (1) Blanche Carney, Commissioner of CFCF; (2) John Delaney, Warden of CFCF; (3) Edward Miranda, a Deputy Warden at CFCF; (4) Sergeant A. Miles, a Correctional Sergeant at CFCF; and (5) Sergeant Lebesco, also a Correctional Sergeant at CFCF. Abdullah sued the Defendants in their individual and official capacities. His claims are based upon his detention in the administrative segregation unit at CFCF and the conditions in that unit.

---

[1] The following allegations are taken from the Complaint and exhibits attached to the Complaint.

1

Abdullah alleges that on August 27, 2019, Sergeants Miles and Lebesco searched his cell as a result of an incident "that allegedly occurred between [Abdullah] and a female correctional officer that morning inside of an area without surveillance." (Compl. ECF No. 3 at 1.)[2] Although Abdullah and the female officer both claimed nothing occurred, Miles and Lebesco moved Abdullah from general population to administrative segregation. (*Id.*) Abdullah claims that, while housed on the administrative segregation unit, he was "deprived of outdoor exercise" and that his "legal and non-legal mail [were] both unreasonably censored, and significantly delayed in being given to him." (*Id.* at 1-2.) He adds that "[a] lot of mail that came from [his] family was either destroyed or not given to him." (*Id.* at 2.)

Abdullah filed grievances with Deputy Warden Miranda about these issues and alleges that Warden Delaney and Commissioner Carney received those grievances as well. (*Id.*) Abdullah contends that in response to those grievances, Miranda, Delaney and Carney "collectively conspired to disregard [his] First and Fourteenth Amendment Constitutional rights by agreeing to keep [Abdullah] under inhumane conditions, under false and fraudulent allegations and false representations that there was an ongoing internal affairs investigation." (*Id.*)

At the time he filed his Complaint in the instant civil action, Abdullah had been housed in administrative segregation for approximately four months. (*Id.*) He alleges that he was never notified of the reasons for the treatment of his mail, the restrictions on his exercise, or "most importantly, why he could not go back to general population." (*Id.*) He claims that Miranda, Carney and Delaney have subjected him to punishment without any evidence and "without him being given any misconduct report" to support his treatment. (*Id.*)

---

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

Abdullah also attached copies of grievances to his Complaint. Two grievances address Abdullah's allegation that he was placed in segregation without having received notice as to what, if any, policy or procedure he allegedly violated. (*Id.* at 5 & 7.) In one of those grievances, Abdullah indicated that he attended four administrative hearings and was told at each hearing that he was under investigation for having allegedly gone into the Correctional Officers' bathroom with a female correctional officer, but grieved that he did not receive written notice of any disciplinary infractions. (*Id.* at 7.) Abdullah also attached to his Complaint a copy of Carney's response to his appeal of a grievance, which indicates that Carney and Miranda concurred that Abdullah would "remain in segregated housing until the outcome of an internal affairs investigation." (*Id.* at 4.)

In an unrelated grievance, which is partially illegible due to the scanning quality, Abdullah asserted that he did not receive certain mail that he was informed had been sent to him by his family members. (*Id.* at 6.) Abdullah attached a second grievance regarding mail issues in which he indicated he received some, but not all, of his legal mail. (*Id.* at 8.)

In the instant proceeding, Abdullah brings claims under the First and Fourteenth Amendments in connection with his placement in administrative segregation, restrictions on outdoor exercise, and handling of his mail.[3] He seeks $250,000 in damages as well as other assorted relief. (*Id.* at 3.)

---

[3] It does not appear that Abdullah intends to raise claims based on the search of his cell, but if he did, any such claims fail. *See Hudson v. Palmer*, 468 U.S. 517, 530 (1984) (explaining that "prisoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells"); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration.").

3

## II. STANDARD OF REVIEW

As Abdullah is proceeding *in forma pauperis* (ECF No. 6), 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Abdullah is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Abdullah has failed to state a claim with the exception of his claims against the Defendants in their individual capacities based on his placement in administrative segregation.

### A. Official Capacity Claims

Claims against City officials named in their official capacity are indistinguishable from claims against the City. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658,

690, n. 55 (1978)). That is because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky*, 473 U.S. at 166. In other words, Abdullah's official capacity claims are effectively claims against the City of Philadelphia.

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). A plaintiff illustrates that a custom was the proximate cause of his injuries by demonstrating that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury." *Id.* (internal quotations and alterations omitted).

Alternatively, a plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 f.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult

5

choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

Abdullah's Complaint is devoid of any allegations connecting the alleged constitutional violations he suffered to a municipal policy or custom. The Court will therefore dismiss Abdullah's claims against the Defendants in their official capacities as not plausible. Abdullah's claims against the Defendants in their individual capacities are addressed below.

**B. Denial of Outdoor Exercise**

Abdullah asserts due process claims based on the denial of outdoor exercise. Pretrial detainees are protected from "punishment" by the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Unconstitutional punishment includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* A prison condition "'amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Id.* (quoting *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999). "In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution." *Id.*; *see also Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008).

Abdullah's allegation that he was "deprived of outdoor exercise to maintain good physical and mental health" (ECF No. 3 at 1) is too conclusory to support a plausible due process claim. The Complaint does not provide any details about when and how frequently Abdullah

was denied the ability to exercise outdoors and which, if any, of the Defendants were responsible for the denial. Abdullah also has not alleged sufficient facts from which the Court could infer that prison officials unlawfully intended to punish him by denying him exercise or that the conditions in which he was confined were excessive.[4] Without additional facts, this claim fails as pled. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief." (internal quotations omitted)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."); *see also Taggart v. Owens*, Civ. A. No. CV 19-1089, 2020 WL 902920, at *3 (D.N.J. Feb. 25, 2020) ("For the Court to determine whether the totality of the circumstances under which Plaintiff was confined in the CCCF violated the Due Process Clause, Plaintiff needs to provide additional facts."). Abdullah's failure to allege any injury from restrictions on his ability to exercise outdoors is also fatal to his claim. *See Gittens v. Scholtz*, Civ. A. No. 18-2519, 2019 WL 3417091, at *10 (D.N.J. July 29, 2019) (concluding that prisoner's denial of exercise claim "fail[ed] because he did not allege that he suffered any harm from his inability to exercise outside of his cell").

### C. Interference with Mail

The Court understands Abdullah to be asserting a First Amendment claim based on the allegations about his mail. Prisoners have a First Amendment right to receive mail, although that right may be restricted for legitimate penological reasons. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Turner v. Safley,* 482 U.S. 78, 85 (1987); *Jones v. Brown*, 461 F.3d 353, 358

---

[4] Restrictions on Abdullah's ability to exercise were presumably a result of his placement in administrative segregation.

(3d Cir. 2006). Although isolated instances of interference with a prisoner's mail are insufficient to support a constitutional violation, a "pattern and practice of opening properly marked incoming [legal] mail outside an inmate's presence infringes communication protected by the right to free speech." *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996); *see also Taylor v. Oney*, 196 F. App'x. 126, 128 (3d Cir. 2006) (reaffirming holding in *Bieregu* that "prison officials impinge upon the First Amendment rights of prisoners when they open prisoners' legal mail outside the presence of the addressee prisoner"). To state a First Amendment claim for interference with a prisoner's legal mail, a plaintiff must allege that the interference was done according to a "pattern and practice." *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) ("A state pattern and practice . . . of opening legal mail outside the presence of the addressee inmate . . . impinges upon the inmate's right to freedom of speech.").

Here, Abdullah's allegations fall short of stating a First Amendment claim. He broadly alleges that his legal and non-legal mail were "unreasonably censored" and that his receipt of mail was "significantly delayed." (ECF No. 3 at 2.) He also alleges that "a lot" of mail sent to him by his family "was either destroyed or not given to him." (*Id.*) However, Abdullah does not provide specific facts about the nature of the mail in question, when and how often the censorship or delays occurred, what he means by "unreasonably censored" and, importantly, what role each Defendant played in the handling of his mail. He alleges only that the Defendants, collectively, had "knowledge" of the interference with his mail, without any supporting factual assertions. (*Id.*) Accordingly, Abdullah's allegations about his mail are too vague and conclusory to state a First Amendment claim or support a basis for liability against any of the named Defendants.

### D. Placement in Administrative Segregation

Abdullah's claims based on his placement in administrative segregation are best construed as due process claims. "[D]etention officials' restrictions on pretrial detainees will constitute punishment prohibited by the Due Process Clause when: (1) "there is a showing of express intent to punish on the part of [those] [ ] officials"; (2) "the restriction or condition is not rationally related to a legitimate non-punitive government purpose," i.e., "if it is arbitrary or purposeless"; or (3) "the restriction is excessive in light of that purpose." *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017) (quoting *Stevenson*, 495 F.3d at 67-68) (alterations in original). "[M]aintaining internal security and order in jails and prisons are 'legitimate governmental objectives'" that may justify placement of a detainee in administrative segregation, and "courts must give prison officials considerable discretion to manage internal security in their institutions." *Id.* In other words, if officials can articulate a legitimate managerial concern for placement of the detainee in restricted housing, a substantive due process claim is foreclosed. *Stevenson*, 495 F.3d at 69 ("Although the substantive and procedural due process evaluations are distinct, a showing by the prison officials that a restrictive housing assignment is predicated on a legitimate managerial concern and is therefore not arbitrary or purposeless, will typically foreclose the substantive due process inquiry").

From a procedural standpoint, "[t]he degree of process required varies depending on the reason for the transfer, with greater process accorded to prisoners who are confined for disciplinary infractions than those moved for purely administrative reasons." *Id.* at 70. "[T]he procedures required by *Wolff v. McDonnell,* 418 U.S. 539 (1974), apply if the restraint on liberty is imposed for disciplinary reasons; if the restraint is for 'administrative' purposes, the minimal procedures outlined in *Hewitt v. Helms,* 459 U.S. 460 (1983) are all that is required." *Lewis v.*

*Williams*, Civ. A. No. 05-013, 2011 WL 2441377, at *17 (D. Del. June 13, 2011) (citing *Stevenson*, 495 F.3d at 70). The procedures set forth in *Wolff* "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018); *see also Quiero v. Ott*, 799 F. App'x 144 at n.6 (3d Cir. 2020) (per curiam). *Hewitt* requires that, within a reasonable time, a detainee be given an explanation of the reason for the administrative transfer as well as an opportunity to respond. *Steele*, 855 F.3d at 507; *Stevenson,* 495 F.3d at 70 (citations omitted). Moreover, "the filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process," *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (per curiam), as "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports." *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (per curiam); *see also Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim.").

Here, Abdullah alleges that he was placed in administrative segregation for over four months. Although Abdullah has not pled an independent basis for a constitutional claim based on restrictions on his exercise or mail, a fair inference is that he is being subjected to more restrictive conditions based on his placement in the administrative segregation unit relative to the conditions in the general population. Abdullah alleges that his continued placement in administrative segregation is based on falsehoods, that he has not been charged with any disciplinary infraction, and that he has not been provided a reason as to why he may not return to

10

the general population. However, it is also apparent from Abdullah's pleading that he was informed of the reason for his placement in administrative segregation (albeit, one with which he disagrees), that he attended four administrative hearings and that he was informed he would continue to be held pending the outcome of an investigation into the incident that allegedly occurred on August 27, 2019 (one he describes as false). As it is unclear at this early stage of the litigation, taking all Abdullah's allegations and reasonable inferences as true, whether Abdullah's placement in administrative segregation for more than four months was justified and whether he received the process he was due under the circumstances, Abdullah may proceed on these claims at this early stage of the litigation. *See Parkell v. Morgan*, 682 F. App'x 155, 158 (3d Cir. 2017) (per curiam) (vacating dismissal of due process claim because it was reasonable to infer from allegations that twenty day placement in restrictive housing for possession of commonplace items was excessive and, although the complaint also supported an inference that prison officials were acting to maintain security and discipline, the fact that both inferences could be drawn suggested dismissal was premature); *Stevenson*, 495 F.3d at 66 (conflicting inferences that could be drawn from complaint alleging due process violation based on detainees' indefinite detention in the SHU was not subject to dismissal).

### IV.     CONCLUSION

For the foregoing reasons, the Court will permit Abdullah to proceed on his due process claims challenging his detention in administrative segregation against the Defendants in their individual capacities. The Court will dismiss Abdullah's remaining claims without prejudice. However, the Court will give Abdullah an opportunity to file an amended complaint in accordance with the Court's Order accompanying this Memorandum in the event he can cure the defects in any of his dismissed claims. Accordingly, the Court will not direct service at this time.

However, if Abdullah opts not to file an amended complaint, he may notify the Court of his intention to proceed only as to his remaining claim.  An Order follows, which provides further instructions about amendment.

**BY THE COURT:**

**s/ Michael M. Baylson**

_____
**MICHAEL M. BAYLSON, J.**